# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 28 2018, 8:18 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Cara Schaefer Wieneke
Wieneke Law Office, LLC
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Andrea E. Rahman
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Termination of the Parent-Child Relationship of M.N. (Minor Child): | June 28, 2018 |
| J.N. (Father), | Court of Appeals Case No. 18A-JT-492 |
| *Appellant-Respondent,* | Appeal from the Huntington Circuit Court |
| v. | The Honorable Thomas M. Hakes, Judge |
| Indiana Department of Child Services, | Trial Court Cause No. 35C01-1705-JT-7 |
| *Appellee-Petitioner.* | |

**Najam, Judge.**

# Statement of the Case

J.N. ("Father") appeals the trial court's termination of his parental rights over his minor child M.N. ("Child"). Father raises two issues for our review, which we restate as follows:

> 1. Whether the trial court clearly erred when it concluded that there was a reasonable probability that the continuation of the parent-child relationship posed a threat to Child's well-being.

> 2. Whether termination of Father's parental rights was in Child's best interests.

We affirm.

# Facts and Procedural History

In April of 2015, Father and S.N. ("Mother")[1] were married. Mother gave birth to Child on April 15. In early May, the Indiana Department of Child Services ("DCS") received a report that Father and Mother were using heroin, that Mother had used heroin during her pregnancy with Child, and that Mother was giving heroin to Child. Father later admitted that he knew that Child was getting heroin from Mother's breastmilk, and that he had observed Child exhibiting symptoms of withdrawal.

---

[1] Mother separately appealed the trial court's termination of her parental rights. On June 7, 2018, we affirmed the trial court's termination of her parental rights in a memorandum decision. *S.N. v. Ind. Dep't of Child Servs. (In re M.N.)*, No. 18A-JT-405, 2018 WL 2728195, at *6 (Ind. Ct. App. June 7, 2018), *not yet certified*.

[4] At DCS' request, Father and Mother both submitted to drug screens, which tested positive for heroin. Child also tested positive for heroin at twenty-one days old, at which time DCS filed a petition alleging Child to be a Child in Need of Services ("CHINS") and had Child removed from Father and Mother's care and placed with relatives. At an additional initial hearing two weeks later, Father refused to submit to a new drug screen. Over the summer of 2015, the relatives with whom Child had been placed prepared Child for four separate visits with Father. Father was late to two of those visits.

[5] In July, the State alleged that Father had engaged in dealing in cocaine or a narcotic drug as well as neglect of a dependent (Child) resulting in bodily injury. Father was released on bail in early October and the trial court permitted him to have supervised visitation with Child while on bail. However, Father did not visit Child regularly. Instead, he saw Child only six times over four months before Father was sentenced on the criminal allegations. At no point prior to or after that incarceration did Father, who receives federal benefits from Veterans Affairs, pay child support for Child.

[6] Prior to Father's release from his incarceration, DCS moved to terminate his parental rights over Child. Numerous witnesses, including Father, testified at an ensuing fact-finding hearing. After that hearing, the trial court entered the following findings of fact:

> 30. At the trial conducted on the termination petition . . . , Jill Denman testified. The following are found as facts and reasonable inferences from this testimony . . . :

a.     Ms. Denman is the Guardian Ad Litem [("GAL")] assigned to this case.

* * *

e.     The [C]hild is a special needs child and Ms. Denman is concerned about parents' abilities to care for themselves[,] let alone the [C]hild.

* * *

32.  At the trial . . . , current relative placement[, S.O.,] testified. The following are found as facts and reasonable inferences from this testimony . . . :

* * *

b.     The [C]hild and his foster brother are extremely close.

c.     The [C]hild faces struggles that require constant vigilance including everything going in his mouth, his getting overstimulated easily, his need for ritual and routine, and his physical limitations which include:

     i.  Eczema

     ii.  Circulation problems with his lower legs

     iii.  Diaper rash

     iv.  Constant sniffles

v. Burning diarrhea in that if he has diarrhea and the diaper is not changed immediately his skin will blister and bleed.

d.      The [C]hild is on the following medications: [S]ingulair, loratadine, steroid cream, and special lotion for eczema.

e.      The [C]hild is being evaluated for a special needs pre-school.

f.      The [C]hild attends weekly speech therapy and occupational therapy.

g.      Father has not sent the [C]hild any cards or letters nor has he called to speak with the [C]hild since the [C]hild was placed in [S.O.'s] home [shortly after Father's incarceration].

h.      Father has not paid any child support since the child was placed with [S.O.]

* * *

j.      [S.O.] testified that she believed Mother and Father could learn to care for the [C]hild, but it would be detrimental for the [C]hild to wait that long for parents to be released from prison and for the [C]hild to be removed from [her] home.

33. At the trial . . . , Family Case Manager [("FCM")] Cora Kennedy testified. The following are found as facts and reasonable inferences from this testimony . . . :

* * *

b. The [C]hild has developed additional issues with communication and concentration.

c. FCM Kennedy has referred First Steps for the [C]hild and the [C]hild is in speech therapy and occupational therapy weekly.

d. The [C]hild is currently having difficulties with using words and expressing himself.

e. The [C]hild does not recognize himself in a photo.

f. The [C]hild will continue to face developmental difficulties requiring services.

* * *

m. FCM Kennedy was unaware of any classes or services that Father was participating in during his incarceration.

* * *

p. Father did not write any letters or emails or try to call FCM Kennedy while he was in the Department of Correction[.]

* * *

> x. The [C]hild has not been returned to the care or custody of either parent since his removal [at twenty-one days old].
>
> y. The [C]hild is bonded with placement and placement is willing to adopt the [C]hild.
>
> 34. The [C]hild views his relative placement as his family.

Appellant's App. Vol. 2 at 108-11. In light of its findings, the court ordered the termination of Father's parental rights. This appeal ensued.

## Discussion and Decision

### *Overview*

We begin our review of this appeal by acknowledging that "[t]he traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." *Bailey v. Tippecanoe Div. of Fam. & Child. (In re M.B.)*, 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied*. However, a trial court must subordinate the interests of the parents to those of the child when evaluating the circumstances surrounding a termination. *Schultz v. Porter Cty. Off. of Fam. & Child. (In re K.S.)*, 750 N.E.2d 832, 837 (Ind. Ct. App. 2001). Termination of a parent-child relationship is proper where a child's emotional and physical development is threatened. *Id.* Although the right to raise one's own child should not be terminated solely because there is a better home available for the child, parental rights may be

terminated when a parent is unable or unwilling to meet his or her parental responsibilities. *Id.* at 836.

[8] Before an involuntary termination of parental rights can occur in Indiana, DCS is required to allege and prove:

> (B) that one (1) of the following is true:
>
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>>
>> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>>
>> * * *
>
> (C) that termination is in the best interests of the child; and
>
> (D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2) (2018). DCS's "burden of proof in termination of parental rights cases is one of 'clear and convincing evidence.'" *R.Y. v. Ind. Dep't of Child Servs. (In re G.Y.)*, 904 N.E.2d 1257, 1260-61 (Ind. 2009) (quoting I.C. § 31-37-14-2).

[9] When reviewing a termination of parental rights, we will not reweigh the evidence or judge the credibility of the witnesses. *Peterson v. Marion Cty. Off. of Fam. & Child. (In re D.D.)*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans.*

*denied*. Instead, we consider only the evidence and reasonable inferences that are most favorable to the judgment. *Id.* Moreover, in deference to the trial court's unique position to assess the evidence, we will set aside the court's judgment terminating a parent-child relationship only if it is clearly erroneous. *Judy S. v. Noble Cty. Off. of Fam. & Child. (In re L.S.)*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied*.

[10] Here, in terminating Father's parental rights, the trial court entered findings of fact and conclusions thereon following an evidentiary hearing. When a trial court's judgment is based on such findings and conclusions, we apply a two-tiered standard of review. *Bester v. Lake Cty. Off. of Fam. & Child.*, 839 N.E.2d 143, 147 (Ind. 2005). First, we determine whether the evidence supports the findings, and, second, we determine whether the findings support the judgment. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). If the evidence and inferences support the trial court's decision, we must affirm. *In re L.S.*, 717 N.E.2d at 208.

[11] On appeal, Father contends that the trial court erred when it concluded: that the conditions that resulted in Child's removal will not be remedied; that there is a reasonable probability that the continuation of the parent-child relationship poses a threat to Child's well-being; and that termination is in Child's best interests. Because the statute is written in the disjunctive, we need not address the court's conclusion that reasons that resulted in Child's removal will not be remedied. *See* I.C. § 31-35-2-4(b)(2).

### *Child's Well-Being*

[12]     We first address the trial court's conclusion that there is a reasonable probability that the continuation of the parent-child relationship poses a threat to Child's well-being. Again, termination of parental rights is proper where the child's emotional and physical development is threatened. *Ferbert v. Marion Cty. Off. of Fam. & Child. (In re T.F.)*, 743 N.E.2d 766, 773 (Ind. Ct. App. 2001), *trans. denied*. The court need not wait until the child is harmed irreversibly such that his physical, mental, and social development is permanently impaired. *Id.*

[13]     To support its finding that continuation of the parent-child relationship posed a threat to the well-being of Child, the trial court found that Father knew Mother was giving and feeding Child heroin during the first three weeks of Child's life; that Father had not had care or custody of Child once Child was removed from Father's care at twenty-one days old; that Father had visited Child only six times in the four months he was out on bail prior to his incarceration; that Father had not made any attempts to communicate with Child during Father's incarceration; and that Father had not provided any child support to Child.

[14]     In addition, the trial court found that Child had numerous developmental challenges due to Child's exposure to heroin before and after birth. Specifically, the court found that Child had experienced withdrawal for the first three months Child lived with relative placement; that Child requires a set schedule and consistent ritual "in order to function properly and to be able to sleep at night"; that Child is a special-needs Child; that the GAL is concerned about Father's ability to care for himself, let alone Child; that waiting for both parents

to be released from their incarceration before moving forward with adoption "would be detrimental" to Child; and that Child "faces struggles that require constant vigilance," including watching "everything that goes in his mouth, his getting overstimulated easily, his need for ritual and routine, and his physical limitations." Appellant's App. Vol. 2 at 108-11.

[15] On appeal, Father argues that the trial court's judgment is clearly erroneous because Father has made progress with services and sobriety since Child's removal from his care.[2] But we are not persuaded by Father's argument, which is simply an invitation for this Court to reweigh the evidence and judge the credibility of the witnesses, which we cannot do. Based on Father's treatment of Child prior to DCS' involvement, his nearly complete absence from Child's life between DCS' initial involvement and the termination hearing, and the challenges Child has faced and will continue to face because of Father's actions, we hold that the trial court's findings support its conclusion that the continuation of the parent-child relationship poses a threat to the well-being of Child.

### Child's Best Interests

[16] Father also asserts that the trial court clearly erred when it concluded that the termination of Father's parental rights is in Child's best interests. In

---

[2] In its brief, the State asserts that "Father attempts to rely on the case of *In re K.E.*, 39 N.E.3d 641 (Ind. 2015) . . . ." Appellee's Br. at 19. But the Table of Authorities in Father's brief on appeal does not reference *In re K.E.*, nor is that case discussed in the body of Father's brief. As such, we do not consider *In re K.E. See* Ind. Appellate Rule 46(A)(8)(a).

determining what is in Child's best interests, a juvenile court is required to look beyond the factors identified by DCS and consider the totality of the evidence. *A.S. v. Ind. Dep't of Child Servs. (In re A.K.)*, 924 N.E.2d 212, 223 (Ind. Ct. App. 2010). A parent's historical inability to provide a suitable environment, along with the parent's current inability to do so, supports finding termination of parental rights is in the best interests of the child. *Evans v. St. Joseph Cty. Off. of Fam. & Child. (In re A.L.H.)*, 774 N.E.2d 896, 990 (Ind. Ct. App. 2002). The recommendations of a DCS case manager and court-appointed advocate to terminate parental rights, in addition to evidence that the continuation of the parent-child relationship is contrary to the child's well-being, are sufficient to show by clear and convincing evidence that termination is in the child's best interests. *See Stewart v. Ind. Dep't of Child Servs. (In re J.S.)*, 906 N.E.2d 226, 236 (Ind. Ct. App. 2009).

[17] Regarding Child's best interests, the trial court found: that Child was bonded with his current caregiver; that Child viewed his relative placement as his family; that Child has been in placement since he was three weeks old; that Child has multiple physical and mental difficulties due to being given heroin when Child was an infant; and that prolonging Child's permanency plan to wait for Mother and Father to be released from their respective incarcerations "would be detrimental" to Child. Appellant's App. Vol. 2 at 109. Further, both the GAL and Child's relative placements recommended the termination of Father's parental rights.

[18] Nonetheless, Father asserts on appeal that the trial court's judgment is clearly erroneous because "Child's current placement, who planned to adopt Child, testified that Child could remain in her home even if Father's parental rights were not terminated," and this "coupled with Father's significant progress in overcoming his addiction demonstrated that termination was not in Child's best interests." Appellant's Br. at 17. But Father's argument is, again, simply a request for this Court to reweigh the evidence on appeal, which we cannot do. We are unconvinced by Father's argument and hold that the evidence supports the trial court's findings, and that the court's findings support its judgment. Accordingly, we affirm the trial court's termination of Father's parental rights over Child.

[19] Affirmed.

Robb, J., and Altice, J., concur.